321 So.2d 532 (1975)
Richard (Dickie) MARTIN, Plaintiff-Appellant,
v.
CITY OF ST. MARTINVILLE, Defendant-Appellee.
No. 5116.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
Rehearing Denied November 13, 1975.
Writ Refused January 9, 1976.
*533 Taylor & Trosclair by Frank P. Trosclair, Jr., Opelousas, and J. Burton Willis, St. Martinville, for plaintiff-appellant.
Paul DeMahy, St. Martinville, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Richard (Dickie) Martin instituted this action in the Sixteenth Judicial District Court as an appeal from a decision rendered by the St. Martinville Police Civil Service Board affirming his dismissal as Chief of Police of the City of St. Martinville. He demands that the decision of the Civil Service Board be reversed, and that he be reinstated as Chief of Police with full benefits and all back pay. Judgment was rendered by the district court affirming the action of the Civil Service Board. Martin thereupon appealed to this court.
The issues presented are whether the action of the Mayor and City Council of the City of St. Martinville in dismissing plaintiff as Chief of Police was taken "in good faith for cause," and whether the decision of the St. Martinville Police Civil Service Board affirming his dismissal was made "in good faith for cause."
Martin served as Chief of Police for the City of St. Martinville for a period of approximately eight years immediately prior to October 1, 1974. He thus was a police civil service employee of that city, under the provisions of LSA-R.S. 33:2531 et seq.
On October 1, 1974, the Mayor and City Council of the City of St. Martinville adopted a resolution suspending Martin indefinitely from his position as Chief of Police. Two reasons for that action were set out in the resolution. On the following day, Martin appealed from that suspension to the St. Martinville Police Civil Service Board.
On October 8, 1974, while that appeal was pending, the Mayor and City Council adopted another resolution formally dismissing Martin as Chief of Police of St. Martinville, assigning the following reasons for that action:
"(1) Failure to report to work on any particular schedule;
"(2) Failure to perform his duties in the following respects:
"(a) In spite of specific instructions, and with full knowledge, he personally released several persons whom he had previously arrested for possession of narcotics;
"(b) He personally investigated noises and disturbances in a house owned by Miss Therese Borel, heard the noises and conversations about narcotics on the inside and failed to arrest anyone, even though it was well known that the conversations inside the building was about narcotics;
"(c) Failed to prepare reports and deliver evidence from his office to the District Attorney for prosecution of cases investigated by his office for an unusually long period of time;
"(3) Since his suspension on October 1, 1974, he informed the news media and caused to be printed in the Daily Advertiser a statement by him alleging that *534 one member of the Council had told him that he had not voted for his suspension at the meeting on October 1, 1974, knowing that said council member had, in fact, voted for his suspension in his presence;
"(4) Since his suspension on October 1, 1974, he caused to be published in the Daily Advertiser a statement that another member of the Council had informed him that if the vote for his suspension were to be brought up again the results would be different, implying that the other councilman would have voted differently, knowing that such a statement was not what the councilman had said to him."
The first two reasons assigned for dismissal, as shown in the above resolution, are substantially the same as the reasons which were assigned one week earlier for suspending him as Chief of Police. Reasons (3) and (4) in the resolution dismissing him were not included in the October 1, 1974, resolution of suspension.
Martin appealed to the St. Martinville Police Civil Service Board from the action of the Mayor and City Council dismissing him as Chief of Police.
A somewhat protracted hearing was held before the Police Civil Service Board on plaintiff's appeal from his dismissal, the hearing having begun on October 29 and ended on November 8, 1974. At that hearing Martin filed a motion to dismiss the charges, one of the grounds being that the charges do not allege legal grounds for disciplinary action, as provided in LSA-R. S. 33:2560(A). The Board overruled plaintiff's motion as to charges 1 through 2(c), and it deferred action on charges 3 and 4. The Board then heard evidence only as to charges 1 through 2(c). A hearing was not held on charges 3 and 4, and those charges are not before us on this appeal.
The Police Civil Service Board rendered a decision on November 15, 1974, affirming the dismissal of plaintiff by the Mayor and City Council. They assigned as reasons therefor that "Considering the law and the evidence, we find that the Mayor and City Council acted in good faith for cause as set forth by law and we do hereby affirm the action of same Appointing Authority discharging Chief of Police Richard Martin."
Martin then instituted this action in the Sixteenth Judicial District seeking judicial review of the Board's decision. He contends that the decision was not made "in good faith for cause," as required by LSA-R.S. 33:2561. The trial judge concluded that the Board "had ample evidence before it upon which it could lawfully have decided as it did decide," and that plaintiff had failed to demonstrate that the decision was not made in good faith for cause. Judgment thus was rendered by the trial court affirming the action of the Civil Service Board.
Applicable here are the provisions of LSA-R.S. 33:2531-2568, relating to fire and police civil service laws for small municipalities.
The grounds for which the appointing authority may remove or discipline a tenured employee are set out in LSA-R.S. 33:2560. The pertinent part of that section of the Revised Statutes provides:
"A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service or take such disciplinary action as the circumstances warrant in the manner provided below, for any one of the following reasons:
"1. Unwillingness or failure to perform the duties of his position in a satisfactory manner.
"2. The deliberate omission of any act that it was his duty to perform.

*535 "3. The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy."
* * * * * *
"15. Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the fire and police service."
LSA-R.S. 33:2561 provides, in substance, that the issue to be determined by the Police Civil Service Board or by the district court, in the event an appeal is taken to that court, is whether the decision of the appointing authority or of the board was "made in good faith for cause," as set forth in the Fire and Police Civil Service Law for small municipalities (LSA-R.S. 33:2531-2568). We interpret that to mean that the action of the appointing authority, in order to be valid, must be both "in good faith" and "for cause." The action of that authority must be set aside if it was not taken "for cause," even though it may have been taken in good faith. Our particular concern here is whether the suspension or dismissal of plaintiff Martin was made "for cause."
The applicable statutes do not define "cause," and we have been referred to no Louisiana jurisprudence in which that term has been interpreted in connection with similar types of cases. We have found cases decided in other jurisdictions, however, where the word "cause" has been construed in connection with similar statutes, and we consider the reasoning in some of those cases to be persuasive here. In Riley v. Board of Police Commissioners of City of Norwalk, 147 Conn. 113, 157 A. 2d 590 (1960), for instance, the court said, "cause implies a reasonable ground of demotion or removal as distinguished from a frivolous or incompetent ground." The word "cause" also has been defined as "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." Coursey v. Board of Fire and Police Commissioners, 90 Ill.App.2d 31, 234 N.E.2d 339 (1st Dist. 3rd Div.1967).
We believe that in order for the dismissal or the disciplining of a tenured police officer to be valid, as being in good faith for cause under LSA-R.S. 33:2561, the dismissal or disciplinary action must be reasonably necessary for the continued efficiency of the service being rendered by the appointing authority. The evidence must show that the failure to dismiss or discipline the officer would be detrimental to the city or to the service which it is required to perform. The dismissal of such an officer cannot be said to have been made "in good faith," if the appointing authority acted arbitrarily or capriciously, or if the action taken was the result of prejudice or political expediency. His dismissal cannot be said to have been "for cause," if the evidence fails to show that it was necessary for the discipline and efficiency of the police department, or that it was needed to avoid some detriment to that department or to the city.
Our review of the evidence convinces us that the dismissal of plaintiff Martin was not made "for cause," and that the decision of the Police Civil Service Board affirming that dismissal must be reversed.
The first reason assigned by the appointing authority for the dismissal of Martin was his "failure to report to work on any particular schedule."
The evidence shows that during the latter part of June, 1974, the Mayor asked Martin to make up a work schedule for "one month ahead of time" for members of the city police force. That request was made in the presence of other members of the City Council and it was made because the Mayor and Councilmen had discovered that some policemen were doing a considerable *536 amount of overtime work. They felt that by making up a work schedule for the department the policemen would work more reasonable hours and the city's expenditures for overtime pay would be reduced. Martin promptly made up a work schedule for all city policemen for the months of July and August, 1974, as requested, and he submitted that schedule to the Mayor and to members of the City Council. Martin included his own name on that schedule, showing that he would work from 8:00 A.M. to 4:00 P.M. each day, Monday through Friday, and that he would be on "24 hr. call" every Saturday and Sunday.
Martin testified that he placed his own name on the schedule "for the sake of putting it down and to have my name down." He stated, however, that it would have been impossible for him to perform his duties as Chief of Police if he were required to remain in his office during a scheduled number of hours each day, and for that reason the schedule was not intended to indicate that he would remain in his office or in the police headquarters during the hours he was scheduled to work. He testified that his duties required him to be out of his office frequently during the day, on weekends and at night, many times for investigations and for stake outs. He concedes that he was not in his office at all times during the hours shown on the schedules which he submitted to the City Council, but he testified that he worked more than eight hours every day. The record shows that Martin has never submitted a claim for overtime work, and that he has never received any overtime pay.
Copies of the minutes of all meetings of the City Council of the City of St. Martinville held in the month of June, 1974, were introduced in evidence, and those minutes show that no official action was ever taken by the city ordering or directing Martin to work any particular number of hours each day. We find no evidence in the record indicating that the Mayor, any member of the City Council or any other authority ever instructed Martin to remain in his office or in the Police Department headquarters during a particular number of hours on any day of the week. He was simply asked to work out and submit a schedule of working hours for those who were in his department.
The only evidence presented which was intended to show that Martin had failed to report to work on any particular schedule was the testimony of the Mayor, four members of the City Council and a secretary who worked in Martin's office. The secretary was a member of the Police Civil Service Board which had affirmed the action of the City Council. The testimony of the Mayor and members of the City Council was to the effect that they had visited the police station from time to time between the hours of 8:00 A.M. and 4:00 P. M., Monday through Friday, from June 1 to October 1, 1974, and that they had failed to find Martin in that station on most of those occasions. The secretary verified the fact that Martin did not remain in his office during the hours shown on the schedules, and that she frequently did not know where he was, although she conceded that the radio dispatcher usually was kept informed as to where he was and how he could be located.
A number of witnesses testified in behalf of plaintiff Martin, including several members and former members of the police force in St. Martinville, the former Chief of Police of that city, the Chief of Police of New Iberia, and one member of the City Council. The testimony of these witnesses is convincing to the effect that it would be impossible for the Chief of Police to discharge his duties properly if he should be required to remain in his office during scheduled hours each day, that Martin was available at all times, that no one had had any difficulty in contacting him immediately on the many occasions when it became necessary or desirable to do so, and that Martin worked more than eight hours every day. The evidence convinces us that he performed his duties as *537 Chief of Police efficiently, that he could not have performed those duties properly if he had remained in his office during the hours shown on the schedules which were submitted to the City Council, that he was never instructed to remain in his office during the hours shown on the schedule, and that his failure to maintain office hours in accordance with those schedules did not in any way detract from or lessen the efficiency of the police department.
The schedules, of course, do not indicate that the policemen listed thereon, including the Chief of Police, were to remain in the police station during all of the hours they were on duty. A police department obviously could not be operated effectively with such a requirement, since it would eliminate such services as patrolling, investigations, stake outs and apprehending offenders. The fact that plaintiff was not in the police station on many occasions when the Mayor and councilmen visited it does not establish, therefore, that Martin had failed to report to work on those days.
Our conclusion is that the evidence does not show that Martin failed "to report to work on any particular schedule." His failure to maintain scheduled office hours does not constitute a sufficient "cause" for his dismissal. The action of the Mayor and City Council of the City of St. Martinville in dismissing him, therefore, insofar as that dismissal was based on Charge 1, was not "for cause," as that term is used in LSA-R.S. 33:2561.
The defendant city contends in Charge 2(a) that Martin released several persons whom he had previously arrested for possession of narcotics, contrary to the specific instructions which he had received from the Mayor and City Council and with full knowledge of the circumstances. This charge was based largely on the arrest and subsequent release of one person, an 18-year-old girl, for possession of marijuana.
A "concert" was scheduled to be held in St. Martinville on July 4, 1974. Mayor Earl H. Willis testified that plans for law enforcement on that date were discussed at a meeting of the City Council held on July 2, the pertinent part of his testimony being as follows:
". . . somebody, I think it was Mr. Lee Dugas, asked if the city and the police were going to be hard on narcotic violators, and I answered his question, and the Chief of Police was there and other police officers were there, and I told him that laws were made and the police should enforce all laws, and I told him that I was specifically instructing all police officers in St. Martinville to specifically arrest any law violators at the fourth of July or any other time, including those who were violating the narcotics laws, even if in the minds of some people there was a feeling that marijuana was not bad, it was still illegal, and that there was no distinction to be made by police officers with reference to the marijuana laws as opposed to the other types of laws that were there."
Mayor Willis also testified that he talked to plaintiff after the above meeting of the City Council, and discussed with him generally plans for law enforcement while the concert was being conducted, and he told Martin that "peace and order were very important for St. Martinville."
The minutes of the July 2 meeting of the City Council do not show that this matter was discussed at that meeting, and they disclose that no action was taken by the City Council relating to law enforcement during that concert.
While the concert was being conducted on July 4, Martin and some members of his department observed a group of young people around a van, and an investigation resulted in the arrest of the above mentioned 18-year-old girl who was found to have a small quantity of marijuana in her possession, sufficient to justify a misdemeanor charge against her. The girl and three of her companions were arrested and were taken to police headquarters. The companions were released shortly thereafter *538 since there was no evidence on which charges could be based.
Martin and other officers interrogated the girl, and during the course of that investigation she agreed to serve as an "informer" and to assist the State Police in locating and apprehending the source of the narcotic traffic in the Lafayette area. Martin called the State Police and made arrangements for her to work with them. After that arrangement was made, the girl was released from arrest.
Martin maintained contact with the State Police concerning the case, and the latter subsequently informed him that they had talked to the girl, but that she was so nervous that they felt she could not be of any assistance to them. No charges were filed against the girl, and no further action was taken in that case. Martin explained that when the offer of a narcotics violator to serve as an informant is accepted, charges customarily are not filed against him for that violation, since the filing of charges would preclude the possibility of obtaining any other informers.
Several law enforcement officers with experience in the investigation of narcotics violations testified that the action taken by Martin in that case was proper and was in accordance with good law enforcement practices. The use of informants, they state, is the main weapon used by enforcement officers in detecting and apprehending the distributors of narcotics. Informants usually are people who are apprehended for simple possession of narcotics, and who agree to assist the police in lieu of being charged. The evidence indicates that in this instance Martin's actions were consistent with normal police procedure.
The city argues that Martin was derelict in having failed to prosecute the girl after it was determined that she could not be used as an informant. The testimony of experienced police officers is convincing, however, that had Martin subsequently charged her with that violation, his credibility with other potential informants would be destroyed.
When Mayor Willis learned of the incident about four or five weeks after the girl had been apprehended, he discussed the matter with Martin and the latter explained the position he had taken. Martin offered at that time to re-apprehend the girl and to have her charged if the Mayor felt that that should be done. Mayor Willis, however, merely told Martin to "do what you think is best." Martin considered it best to not press charges against the girl.
The defendant, City of St. Martinville, also charges that Martin released a young man, named Mark D. Moulis, who had been arrested on July 4, 1974, under a charge of possession of marijuana.
The evidence shows that this young man was arrested by a city policeman, but that he was confined in the parish jail, which of course was under the supervision and control of the Sheriff of St. Martin Parish, not the St. Martinville Police Department. Martin did not make the arrest, he did not go to the Sheriff's office at any time, he did not sign a formal charge or a report and he did not sign an authorization for the release of Moulis. Sometime after the arrest Martin contacted a deputy sheriff by telephone and requested that the Sheriff permit one of the city policemen to bring all of the offenders in the parish jail who had been arrested on July 4 to his office for questioning. This request apparently was granted by the dispatcher in the Sheriff's office and Moulis was turned over to a city policeman for that purpose.
After Moulis was turned over to a city policeman, the Sheriff's dispatcher scratched out the information relating to Moulis on the booking sheet in the Sheriff's office and he wrote on that sheet "released by Chief Dickie Martin." Martin did not go to the Sheriff's office, he signed no request for the release, and the evidence does not show what disposition was ever made of that case.
*539 The city does not mention the release of young Moulis in its arguments relating to this case, and we assume that it has abandoned that incident as a basis for Charge 2(a). We nevertheless have considered the evidence, and find that there is no cause or justification whatsoever for the dismissal of or for disciplinary action against Martin because of anything which transpired in connection with young Moulis.
We find nothing in Martin's conduct relating to either of these cases which was detrimental to the discipline or efficiency of the police department of the City of St. Martinville. His actions appear to us to be consistent with good law enforcement practices. His failure to file formal charges or to pursue the prosecution of the two possible narcotics violators above mentioned did not constitute sufficient "cause" for his dismissal. We hold, therefore, that the evidence tending to support Charge 2(a) is not sufficient to constitute a "cause" for plaintiff's suspension or dismissal.
We also find no merit to Charge 2(b).
Plaintiff was asked by a deputy sheriff and an investigator from the district attorney's office to check into a report of a possible narcotics violation. Martin and the two officers above mentioned investigated the report and all of them concluded that there was no evidence to support a charge of any kind, not even a charge of disturbing the peace. During that investigation they overheard a young lady criticize the deputy sheriff for having arrested her younger brother at another time for smoking marijuana. Such a criticism, of course, did not constitute a criminal offense.
Although no evidence was found which would warrant a charge of any kind, Martin nevertheless staked out the house for a period of time thereafter, making nine or ten trips to it, to determine whether any offenses related to narcotics were being or had been committed there. He failed to find any evidence of such violations.
We conclude that insofar as Charge 2(b) is concerned, the evidence fails to show that the dismissal was "for cause."
The city charges, in Charge 2(c), that Martin failed to prepare reports and deliver evidence from his office to the district attorney for prosecution of cases investigated by his office for an unusually long period of time.
At the beginning of the trial the appointing authority agreed that this charge was based solely on three incidents. One related to the case of State v. Jeffrey Walker, where the defendant was charged with possession and distribution of illegal drugs in June, 1973. The second involved charges of possession of marijuana filed in May, 1973, in State v. DeLauney, Fuselier, Greig and Melancon. And the third related to a shooting incident which occurred in the city police headquarters on or about May 28, 1974.
The only witness called by the appointing authority to support Charge 2(c) was Tom L. Lovas, who was working as an investigator for the district attorney at the time each of the above mentioned incidents allegedly occurred. Lovas was appointed to replace Martin as Chief of Police on October 1, 1974, and he has continued to serve as Chief of Police since that time. We assume that Lovas will lose his job if Martin is reinstated, and that the interests of Lovas thus are opposed to those of Martin in the instant suit. Neither the district attorney nor any of his assistants were called by the city to support charge 2(c).
Lovas conceded that charges were properly filed in the first two cases above mentioned, and that the district attorney's office had received reports from the arresting officers, statements from all of the witnesses, and reports from the laboratory.
At the trial Lovas testified that he had been instructed by an assistant district attorney *540 to contact Martin to obtain more information about these cases. Pursuant to that instruction, he wrote a form letter to plaintiff on December 13, 1973, requesting that Martin contact him for the purpose of discussing both of the above mentioned cases "and obtaining a statement as to exactly what happened." Lovas was unable to state what information he needed in connection with these cases, because the files of the district attorney were no longer available to him, but he testified that Martin nevertheless did not contact him and provide him with the information he wanted.
Martin testified that he arrested Walker, that he promptly charged him with possession and distribution of marijuana, and that he sent the marijuana to the Acadiana Crime Laboratory for testing. He stated that within the next few days he provided Lovas with a complete, four page report of the case, with statements of the witnesses and with a waiver signed by Walker. He denies that he ever received a letter or request from Lovas for any additional information. Martin also testified that charges were filed, and the same types of reports and statements were furnished promptly to the district attorney in the case involving DeLauney, Fuselier, Greig and Melancon.
The third incident which supposedly forms the basis for this charge related to a shooting in the city police department.
With reference to the shooting incident which occurred on May 28, 1974, the evidence shows that Martin made a full investigation of the incident and concluded that no criminal act had been committed. He nevertheless reported the matter to the Police Civil Service Board, and he appeared before that board at a special meeting held on July 1, 1974, where he again explained what had occurred. The board determined that disciplinary action should be taken against the two patrolmen involved, and that type of action was taken in that each was suspended for thirty days without pay. Martin explained that the city attorney was at that meeting, that he talked to that attorney and that the latter did not suggest at any time that criminal charges should be filed. No charges were preferred in that case.
We find nothing in the evidence which could serve as a "cause" for the dismissal or suspension of Martin in connection with that incident.
Our ultimate conclusion is that the action taken by the Mayor and City Council in October, 1974, suspending and later dismissing Martin as Chief of Police of the City of St. Martinville, was not taken "for cause," as that term is used in LSA-R.S. 33:2561. The suspension and dismissal of Martin, therefore, must be set aside and the city ordered to reinstate him as Chief of Police, with full benefits and all back pay.
In view of the conclusions which we have reached, it is unnecessary for us to consider the other arguments made in behalf of plaintiff, and particularly it is unnecessary for us to determine the question of whether the Mayor and City Council were "in good faith" in ordering the suspension and dismissal of plaintiff.
When this case came up for argument, we raised the question on our own initiative of whether this court has jurisdiction to review the judgment of the district court. At our request counsel submitted additional briefs as to that issue. We are convinced that this court does have jurisdiction to review the decision of the trial court. See Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971); Touchette v. City of Rayne, Municipal Fire & Police Civil Service Board, La.App., 321 So.2d 62.
For the reasons herein set out, the judgment appealed from is reversed. Judgment is hereby rendered ordering and directing the Mayor and City Council of the City of St. Martinville to reinstate plaintiff Martin as Chief of Police of that city, effective October 1, 1974, with full benefits and with restoration of all back pay lost as the *541 result of his illegal suspension or dismissal. The costs of this appeal are assessed to the City of St. Martinville.
Reversed and rendered.

On Application for Rehearing
Before HOOD, CULPEPPER and MILLER, JJ.
PER CURIAM.
The defendant points out in its application for rehearing that we inadvertently assessed costs against the City of St. Martinville, contrary to the provisions of LSA-R.S. 13:4521.
We hereby correct the judgment which we rendered earlier in this case to provide that defendant, City of St. Martinville, is assessed for only those costs which it legally may be obligated to pay under LSA-R.S. 13:4521 or any other pertinent statute.
The application of defendant for a rehearing is denied.