DOMENGEAUX, Judge.
Sergeant Gary Hyatt was suspended without pay from the Lake Charles Police Department on October 22, 1979, by Police Chief Jimmy Gwatney. Hyatt appealed his four-day suspension to the Lake Charles Municipal Fire and Police Civil Service Board (The Board). The Board conducted a hearing on November 19th and November 21, 1979, after which it concluded that the disciplinary action taken against Hyatt “was made in good faith and for just cause.” Hyatt then appealed The Board’s determination to the Fourteenth Judicial District Court. That court reversed The Board’s decision. The court reasoned that the notification advising Hyatt of his suspension and the reasons therefor was deficient because it contained conclusions rather than statements of fact concerning the alleged misconduct of Hyatt. The Board has appealed to this Court.
The statutes governing this case are set forth in La.R.S. 33:2471-2508, relating to fire and police civil service laws for municipalities with populations between 13,000 and 250,00o.[1] R.S. 33:2500 D. provides:
“In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor.”
Pursuant to the statute, Hyatt was issued a letter of personnel action dated October 31, 1979, which stated:
“On October 21, 1979, approximately 5:00 p. m., while effecting arrest of a female subject, was in violation of Municipal Fire and Police Civil Service Law, Act 302, Section 30, Paragraphs 1) Unwillingness or failure to perform the duties of his position in a satisfactory manner, and, 3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.”
Subsequent to receipt of this personnel action letter, Hyatt received a letter dated November 14, 1979. This letter provided Hyatt with names of witnesses to the arrest and of witnesses expected to be called at the Board’s hearing. Also, the letter read:
“I have determined that your conduct impaired the efficiency of the public service and that there was a real and substantial relation between your conduct on the occasion in question and the efficient operation of the Police Department. Your conduct on the occasion in question is specifically prohibited under Article 14, Sec. 15.1, Subdivision 30(1) and (3) of the Louisiana Constitution of 1921, now carried forth as a statute under Louisiana law.”
The trial court found that each of these notices adequately stated the date, time, and place of the occurrence, and the persons involved. However, the notices were deemed inadequate because complete reasons, as required by R.S. 33:2500 D. were not given for this suspension. The court concluded:
“The Court is unable to determine from the notifications of what the conduct consisted; whether the conduct complained of was: an illegal arrest, excessive force in making a lawful arrest, use of improper language, delaying other officers in the performance of their duties, improperly using a gun, exhibitionism for television cameras, unauthorized public statements, failure to be where his duties required him to be or intemperate conduct toward fellow officers or superiors. The notifications did not advise the employee or the board what the conduct consisted *420 of from which the Chief of Police and the Mayor reached the ‘conclusions’ which are contained therein.
The Court finds that the notifications were deficient under the jurisprudential guidelines since they contained conclusions rather than statements of facts concerning the alleged misconduct of the employee. The requirement for specificity has not been fulfilled under the circumstances shown by this record.”
We agree with the trial court that the reasons given for Hyatt’s suspension lacked specificity. However, we need not reach the issue of whether this lack of specific notice constituted insufficient notice under R.S. 33:2500 D.[2] because we find for other reasons that the suspension of Gary Hyatt was imposed without cause and was therefore improper.
In deciding that the suspension was imposed without cause, we have relied upon the rationale used in Martin v. City of St. Martinville, 321 So.2d 532 (La.App. 3rd Cir. 1975), writ denied 325 So.2d 273. In that case, the Mayor and City Council of St. Martinville dismissed the Chief of Police of St. Martinville. The Civil Service Board and the district court upheld the dismissal, finding that the disciplinary action was taken “in good faith for cause” as required by La.R.S. 33:2561.[3] However, the Court of Appeal reversed the dismissal of the Police Chief because it found that the dismissal was not made “for cause”. The Court said:
“LSA-R.S. 33:2561 provides, in substance, that the issue to be determined by the Police Civil Service Board or by the district court, in the event an appeal is taken to that court, is whether the decision of the appointing authority or of the board was ‘made in good faith for cause,’ as set forth in the Fire and Police Civil Service Law for small municipalities (LSA-R.S. 33:2531-2568). [4] We interpret that to mean that the action of the appointing authority, in order to be valid, must be both, ‘in good faith’ and ‘for cause.’ The action of that authority must be set aside if it was not taken ‘for cause,’ even though it may have been taken in good faith. Our particular concern here is whether the suspension or dismissal of plaintiff Martin was made ‘for cause.’
The applicable statutes do not define ‘cause,’ and we have been referred to no Louisiana jurisprudence in which that term has been interpreted in connection with similar types of cases. We have found cases decided in other jurisdictions, however, where the word ‘cause’ has been construed in connection with similar statutes, and we consider the reasoning in some of those cases to be persuasive here. In Riley v. Board of Police Commissioners of City of Norwalk, 147 Conn. 113, 157 A.2d 590 (1960), for instance, the court said, ‘Cause implies a reasonable ground of demotion or removal as distinguished from a frivolous or incompetent ground.’ The word ‘cause’ also has been defined as ‘some substantial shortcoming which renders the employee’s continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.’ Coursey v. Board of Fire and Police Commissioners, 90 Ill. App.2d 31, 234 N.E.2d 339 (1st Dist. 3rd Div. 1967).
We believe that in order for the dismissal or the disciplining of a tenured police officer to be valid, as being in good faith for cause under LSA-R.S. 33:2561, the dismissal or disciplinary action must be reasonably necessary for the continued efficiency of the service being rendered by the appointing authority. The evidence must show that the failure to dismiss or discipline the officer would be *421 detrimental to the city or to the service which it is required to perform. The dismissal of such an officer cannot be said to have been made ‘in good faith,’ if the appointing authority acted arbitrarily or capriciously, or if the action taken was the result of prejudice or political expediency. His dismissal cannot be said to have been ‘for cause,’ if the evidence fails to show that it was necessary for the discipline and efficiency of the police department, or that it was needed to avoid some detriment to that department or to the city.
Our review of the evidence convinces us that the dismissal of plaintiff Martin was not made ‘for cause,’ and that the decision of the Police Civil Service Board affirming that dismissal must be reversed.” (Emphasis added).
The Martin court set out the reasons assigned by the appointing authority for the dismissal. Then the Court exhaustively reviewed the evidence bearing upon each assigned reason before concluding that the dismissal was not warranted by the evidence.
We believe the evidence adduced at the hearing in this case fails to show that the suspension of Gary Hyatt was necessary for the discipline and efficiency of the police department, or that it was needed to avoid some detriment to the department or the city.
The reasons given for the suspension of Gary Hyatt were twofold: (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner; and (2) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.[5]
The conduct upon which the suspension was based occurred about 5:30 P.M. on Sunday, October 21, 1979. Sergeant Hyatt, a plain clothes detective in an unmarked car that day, arrived at a location where three pursued car thieves had moments earlier abandoned the stolen car they were driving. The officers in pursuit had left their squad cars unattended in an effort to apprehend the thieves on foot. When Hyatt arrived at the scene, he took the keys from each of the three police cars and from the stolen vehicle as well, in order to secure control of the vehicles. Then he attempted, with the aid of a loudspeaker, to disperse the swelling crowd of onlookers. He had heard several gunshots from the area where the pursuit had continued on foot, and did not. want anyone to get hurt. By this time he received assistance from the Calcasieu Parish Sheriff’s Department and the State Police. He informed the newly arrived law enforcement officers that he was in charge and instructed them to help keep the crowd out of the two-block area. The performance of his duties to this point was exemplary.
At this point, two men and a woman began walking toward Hyatt in the restricted area. They ignored the orders of a state trooper, Michael Leonards, to stay out of the area. Leonards physically stopped the three and told them three or four times that they could not go down the street. Each time, though, he was brushed aside by the two men, and the belligerent trio, talking loudly and excitedly, continued towards the spot where Hyatt was standing. When they had almost reached Hyatt, Leonards abandoned his efforts to restrain them and allowed them to reach Hyatt.
The two men, Jeff and Steve Thomas, and the woman, Mary Guillory, were brothers and sister. They apparently knew Hyatt since one of the three mentioned his name. The woman, walking ahead of her brothers, informed Hyatt in very offensive language that she was going to her house (which was in the restricted area) to look after her children. Hyatt allowed her to pass and turned to talk to the two men, who were visibly upset. Apparently, another of their brothers, Timmy Lee, was one of the suspects being apprehended in connection with the theft of the car. The Thomas boys had jumped to the conclusion that *422 their brother was killed when shots were fired. Hyatt tried to calm them down by explaining to them that nobody had killed their brother.[6] At this juncture, Mary Guil-lory walked back toward Hyatt screaming or yelling. Then she pushed Hyatt on the shoulder from behind, mentioning something about her brother being shot. Hyatt turned around, told her she was under arrest for interfering with the duties of a police officer, and placed his hand upon her right arm. She jerked her arm away from him and backed up, whereupon Hyatt ran towards her, pushed her with both hands, put his arm around her neck, and then slung her against the state police car near which they were all standing. The woman’s two brothers moved toward Hyatt from behind. Before the brothers reached Hyatt, State Trooper Leonards reappeared from behind the state police car to assist Hyatt. Leonards ran between Hyatt and the two brothers, pushed the larger brother (Steve, who stood about 6'2" and weighed over 200 pounds) away, and grabbed the other brother, who had a metal comb (or “rake”) in his hand. The man Leonards pushed away grabbed Hyatt, who was still struggling with Mary Guillory, and attempted to take Hyatt’s service revolver. Someone called for help and a Sheriff’s Deputy, Warren Broussard, ran to the site of the scuffle, pulled Steve Thomas from Hyatt, and pushed him against the car. Another state policeman, Raymond Hoff-pauir, aided first Broussard, then Leonards, in subduing and handcuffing the two men. Deputy Calton Pitre of the Sheriff’s Department assisted Hyatt by handcuffing the woman. The three were then taken to jail.
KPLC-TV had arrived at the scene because of the pursuit of the car thieves, but began filming Hyatt when the scuffle began. On the ten o’clock news that Sunday evening, Lake Charles viewers witnessed a film clip of Hyatt running toward Mary Guillory, pushing her, putting his arm around her neck, and slinging her against the police car. The KPLC-TV audience also saw Hyatt emerge from the crowd during the scuffle waving his service revolver. The viewers saw little else, because the news camera did not capture the entire incident. Particularly, the audience did not see Mary Guillory resist Hyatt’s efforts to restrain her before he used force to effect the arrest.
Chief Jimmy Gwatney, Captain E. P. Smith, also of the Lake Charles Police Department, and Sergeant Hyatt reviewed the film clip at the KPLC-TV studios the next morning. Gwatney suspended Hyatt without pay until an investigation could be completed to determine whether more severe discipline should be taken. The suspension was imposed solely on the basis of the film clip shown on TV and a fifteen minute discussion with Hyatt about the arrest of Mary Guillory, during which time Hyatt attempted to explain or justify his actions.
Following the suspension, an internal investigation was ordered by Captain Smith and was conducted by Lieutenant Charles McGee and Sergeant Linton DeClouette. Their investigation consisted of interviewing five eye witnesses to the arrest. These witnesses were: Jocelyn Ann Lewis, Jeff Thomas, Lonnie Peter Gradney, Raymond Hoffpauir, and Michael Leonards. While their accounts of the incident differed to some extent, their versions of the altercation and ensuing arrest appreciably correspond with the account detailed above.
We note that the Police Chief’s decision to suspend Hyatt occurred after he viewed the KPLC-TV news clip of the arrest and discussed the incident for about fifteen minutes with Sergeant Hyatt. Only after he suspended Hyatt was the investigation conducted. Lieutenant McGee and Sergeant DeClouette, upon concluding their investigation, formed the opinion that Hyatt should be reinstated and should be paid for those days he was suspended. They felt that no disciplinary action should be taken and stated their opinion to Chief Gwatney.
*423 McGee and DeClouette reached their conclusion after watching the taped arrest that was televised, as well as additional footage that was not aired. This footage tended to corroborate Hyatt’s statement that Mary Guillory was the aggressor. The Police Chief admitted during The Board’s hearing that this additional footage did show that Hyatt initially placed his hand upon Mary Guillory’s arm and that she pulled away. Gwatney maintained, though, that Hyatt had, in his opinion, acted improperly and over-reacted to the situation. Lieutenant McGee commented during his testimony to The Board that Hyatt knew the Thomas boys and knew them to be troublemakers. He felt Hyatt’s actions were reasonable under the circumstances.
Considering all of the circumstances surrounding the arrest, we do not think that the suspension was warranted. Our conclusion that the suspension was unjustified is not based solely upon the opinion of the investigating officers; other circumstances as well prompt our conclusion.
As we appreciate the scenario, the situation was tense. Hyatt was directing efforts to clear bystanders from the area in case a shooting spree erupted. His first concern was for the safety of all innocent bystanders. Jeff and Steve Thomas and Mary Guil-lory demonstrated a complete lack of regard for police authority by ignoring Trooper Leonards’ orders to stay away from the restricted area. They insisted upon interfering with the duties of Sergeant Hyatt. Leonards testified that the three were very belligerent during the entire incident. It is undisputed that Hyatt knew Jeff and Steve Thomas to be troublemakers. It is also undisputed that Steve Thomas was a much larger man than Sergeant Hyatt (who stands about 5'7" tall and weighs about 150 lbs.) and that both he and his brother Jeff were strong, muscular men. Further, Mary Guillory, at 5'9" tall and 174 lbs. was also much larger than Hyatt.
When Mary Guillory returned to Hyatt and pushed him from behind, after he had already let her pass when she voiced concern over her children, Hyatt was justified in placing her under arrest for interfering with his duties as a police officer. Gwatney did not argue that Hyatt had no grounds for the arrest or that the arrest was illegal. Yet, when Hyatt attempted to place her under his control by taking hold of her arm, she resisted. With his back to Jeff and Steve Thomas, who were still belligerent and who were yelling “You can’t do that to my sister” or words to that effect,[7] we think Hyatt acted reasonably in using force to effect the arrest of their sister.
Chief Gwatney testified he thought Hyatt had provoked the incident, that he over-reacted at the scene, causing other people to get involved. He further testified that if Hyatt was going to arrest the woman, his first move should have been to contain or detain her and then to handcuff her. We agree with Chief Gwatney that the first move should have been to contain or detain. But as we observed previously, this was Hyatt’s first move — he placed his hand upon Mary Guillory’s arm to contain her and she jerked it away. Chief Gwatney admitted that his initial impression (that Hyatt’s first move was to shove the lady) was incorrect. Yet he did not revoke the suspension after realizing his mistake because he still felt that Hyatt over-reacted. We do not see how Sergeant Hyatt could have reacted any differently.
Surrounded by three hostile people, one of them armed and at least two of them bigger than he was, Sergeant Hyatt used force to put distance between his unprotected back and the two brothers (by pushing the sister), and to effect the arrest of a resistant Mary Guillory (by slinging the larger woman against the car).[8] That his efforts were unsuccessful inasmuch as other persons became involved was not Sergeant Hyatt’s fault. The fault lay with the three *424 individuals who created the disturbance in the first place by interfering with the duties of Sergeant Hyatt.
We appreciate Chief Gwatney’s initial impression of the incident after viewing the highly prejudicial film clip. But we cannot understand his decision to stand by the suspension after learning that his first impression of Sergeant Hyatt’s first move was inaccurate, and after being informed by the investigating officers of their opinion that no disciplinary action be taken. Our careful review of the record convinces us that Sergeant Hyatt acted properly at all times. Because his actions were proper, albeit controversial because of the distorted and incomplete film aired on television, his suspension could not have been necessary for the continued efficiency of the department, nor could it have been needed to avoid some detriment to the department or the city. Accordingly, we find that his suspension was imposed without cause.
For the above reasons, the judgment of the district court, which reversed the decision of the Civil Service Board affirming the four day suspension without pay of Sergeant Gary Hyatt is affirmed. Judgment is hereby rendered ordering and directing the appointing authority of the City of Lake Charles to reimburse Sergeant Hyatt for all back pay lost as a result of his illegal suspension.
Costs of this appeal, to the extent they may be legally imposed, are assessed against the defendant-appellant, Lake Charles Municipal Fire and Police Civil Service Board.

AFFIRMED.

. Section 2471 provides:
“This Part applies to any municipality which operates a regularly paid fire and police department and which has a population of not less than thirteen thousand nor more than two hundred fifty thousand according to the latest regular federal census for which the official figures have been made public.”
According to the latest federal census for which the official figures were available at the time of trial (the 1970 census) Lake Charles had a population of 77,998.

. The review by the district court is limited to whether decisions made by the Board were made in good faith for cause. La.R.S. 33:2501.

. This statute, affecting smaller municipalities with a population of 7,000 to 13,000, is identical to R.S. 33:2501 in all important respects. 4 R.S. 33:2531-2568 correspond to the applicable statutes here, 33:2471-2508. 33:2501, like 2561 in Martin, limits the district court’s review to whether decisions by the Board were made in good faith for cause.

. These reasons correspond, verbatim, to reasons 1 and 3 respectively, of the 15 reasons, listed in R.S. 33:2500 A., for which disciplinary action may be taken as the circumstances warrant.

. The shots that were heard, as Hyatt later found out, were only warning shots; there had been no exchange of gunfire.

. According to the testimony of Trooper Leon-ards (R. 131).

. According to the testimony of Lonnie Peter Gradney, an eyewitness, Mary Guillory seemed to be getting the best of Sergeant Hyatt during the struggle.