411 So.2d 1242 (1982)
Irvin TRAHAN, Plaintiff-Appellant,
v.
CITY OF JENNINGS MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, Defendant-Appellee.
No. 8694.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*1243 Charles L. Bull, Jr., Welsh, for plaintiff-appellant.
F. Jefferson Millican, Jennings, for defendant-appellee.
Before CULPEPPER, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
Sergeant Irvin Trahan was dismissed from the Jennings, Louisiana Police Department on June 13, 1980. Trahan appealed his dismissal to the City of Jennings Municipal Fire and Police Civil Service Board (hereafter the Board). The Board conducted a hearing and sustained Trahan's dismissal. Thereafter, Trahan timely appealed the Board's action to the 31st Judicial District Court. The district court affirmed concluding that the decision of the Board was made in good faith and for cause pursuant to the provisions of LSA-R.S. 33:2561.[1] Trahan now appeals the decision of the district court.
*1244 LSA-R.S. 33:2531-2568 set forth the fire and police civil service laws for small municipalities.[2] Pursuant to LSA-R.S. 33:2561, Trahan was furnished with written notification of his termination and the reasons therefor. In the aforesaid statement, Trahan was informed that he was being terminated from the police department for violation of several departmental rules, regulations, and policies as well as for violation of certain provisions of the Civil Service Act. The violations allegedly committed by Trahan are as follows:
310.52. Conduct towards superior and subordinate officers and associates. Members and employees shall treat superior officers and associates with respect. They shall be courteous and civil at all times in their relationships with one another when on duty, and particularly, in the presence of the other members and employees or the public. Officers shall be referred to by rank.
310.28. Insubordination. Failure or deliberate refusal of any member or employee to obey a lawful order or criticize instructions or orders being given by a superior officer shall be insubordination.
310.40. Performance of duty. All members and employees shall perform their duties as required or directed by law, department rule, policy, or order or by order from the superior officer. All lawful duties required by competent authority shall be performed promptly as directed notwithstanding the general assignments of duties and responsibilities.
275.10. Leadership. Supervisors must provide leadership for subordinates and this implies the assumption, the initiative when necessary, in setting a proper example in leading the way in carrying out an action or responsibility. Provisions of leadership shall include on-the-job training as needed for efficient operation and coordination of effort when more than one member or employee is involved.
General Order 7101. Interviews prohibited. No member of the department will give out interviews, make statements for publication, or make speeches on department policy or business without permission from proper authorities.
In addition, Sgt. Trahan was charged with violating the Civil Service Act 282 § 2560(d) & (e) (LSA-R.S. 33:2560 A(4) & A(5)) which read respectively:
"§ 2560. Corrective and disciplinary action for maintaining standards of service
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any *1245 employee from the service or take such disciplinary action as the circumstances warrant in the manner provided below, for any one of the following reasons:
....
4. Insubordination.
5. Conduct of a discourteous or wantonly offensive nature toward the public or toward any municipal officer or employee, and any dishonest, disgraceful or immoral conduct...."
The incident which gave rise to Trahan's termination occurred on May 30, 1980. On that date, Trahan allegedly stormed into police headquarters visibly upset. He confronted Assistant Chief of Police, Merrion S. Taylor and began yelling and screaming about the contents of an article printed in the local daily newspaper.[3] The substance of Trahan's complaint centered upon a report in the newspaper indicating that an investigation by the police department into a rash of thefts occurring in the town had not revealed any involvement of members of the police force. Trahan had been assigned to the aforesaid investigation and his investigative efforts had revealed that a member of the police department was involved in the series of thefts. Trahan was particularly upset because a suspect whom he had previously questioned had been re-questioned at some later time without anyone notifying Trahan or requesting his presence at the second interview. Taylor stated that Trahan, within earshot of police officers and other persons in the building, accused him of interfering with his investigation and of covering up for an officer in the department. Thereafter, Trahan departed the office, whereupon he confronted the Mayor of Jennings, Alan Garman. Mayor Garman testified that Trahan was in an enraged state when he met him in the hall of the building. Garman stated that he ushered Trahan into his office to avoid a confrontation before the other persons in the building. Again, Trahan loudly complained that someone was interfering with his investigation. At that time, Mayor Garman specifically ordered Trahan not to speak with the newspapers regarding his complaints since the matter was strictly an internal police department matter. Thereafter, Trahan departed the Mayor's office after which he made a statement to the press regarding his complaints which was later published.
The issues on appeal are:
(1) Did the Board commit reversible error by failing to timely provide a certified copy of the transcript of plaintiff's civil service hearing to the district court?
(2) Did the police department manual of rules and regulations contain conflicting orders, and if so, did such conflicting orders violate plaintiff's due process rights?
(3) Did plaintiff's conduct in disobeying a direct order issued by the Mayor of Jennings constitute insubordination under the provisions of LSA-R.S. 33:2560 and police department regulation 310.28?
(4) Was plaintiff's dismissal from the Jennings Police Department made in good faith and for cause as required by LSA-R.S. 33:2561?
On appeal, plaintiff first contends that the decision of the Board sustaining his dismissal from the Jennings Police Department should be reversed due to the Board's failure to timely provide the district court with a certified copy of the transcript of plaintiff's hearing as required by the provisions of LSA-R.S. 33:2561, supra. The aforesaid statute provides that any employee and/or any appointing authority may appeal from any decision of the board or from any action taken by the board which is prejudicial to the employee or the board. Such appeal is perfected "... by serving the board, within thirty days after entry of its decision, a written notice of appeal, stating the grounds thereof and demanding that a certified transcript of the record, or written findings of fact, and all papers on file in the office of the board affecting or relating to such decisions, be filed with the designated court...." The board must then make, certify, and file the complete transcript of the hearing with the designated *1246 court within ten days of the filing of plaintiff's notice of appeal.
The record before us does not contain a copy of plaintiff's notice of appeal, but we note that there is no dispute regarding the timeliness of same. However, the record does reflect that on October 13, 1980, plaintiff filed with the district court a motion to show cause why the Board should not be held in violation of LSA-R.S. 33:2561 for its failure to file a certified copy of the transcript with the district court. In his motion, plaintiff urged that the Board had presumably abandoned the appeal and judgment should be rendered in favor of petitioner. Plaintiff's motion was subsequently denied. The record reflects that a copy of the hearing transcript was filed with the district court on October 21, 1980. On November 3, 1980, subsequent to trial of plaintiff's motion, the transcript copy was certified. Thus, the record indicates that a certified copy of the transcript of plaintiff's civil service hearing was not timely filed with the district court. Be that as it may, plaintiff has not alleged that he sustained any prejudice as a result of the delinquent filing of the certified transcript. Thus, although we conclude that the Board should have adhered to the time delays for filing as set forth in the applicable statute, absent some showing that petitioner has sustained some prejudice, we conclude that such delay was harmless. See Lauro v. Traveler's Insurance Co., 261 So.2d 261 (La.App. 4th Cir. 1972), writ denied, 262 La. 188, 262 So.2d 787 (1972).
In substance, plaintiff's second contention is that the Jennings Police Department manual containing the rules and regulations governing the conduct of police officers employed by that municipal agency contained conflicting rules and regulations such that plaintiff was not provided with adequate notice of employee conduct prohibited by the department.
In support of this allegation, plaintiff argues that General Order 77-10 and General Order 150.40, both pertaining to chain of command, are in conflict. The aforesaid orders provide respectively as follows:
"77-10 Chain of CommandChief of Police, Assistant Chief, Lieutenant, Police Sergeant, Patrolman-First Class, Patrolman, Police Dispatcher."

"150.40 Chain of CommandChief of Police, Administrative Assistant, Lieutenant, Police Sergeant, Corporal, Patrolman-First Class, Patrolman, Police Dispatcher."
Chief Taylor indicated at the hearing that the difference between the two orders is due to the time during which each was issued. General Order 150.40 was issued subsequent to General Order 77-10. The latter order reflects the change in rank of department personnel. Thus, as department personnel qualify for higher positions by taking the requisite examinations, such higher ranks are reflected in the chain of command.
In addition, although it appears that the aforestated orders are in conflict to a minor degree, we fail to discern any real significance of such difference to the issues presently before this court.
Of greater import, however, is plaintiff's contention that there existed, at the time of the disputed incident, conflicting rules and regulations governing access to the media by department employees. In this regard, plaintiff contends that General Order 7101 issued in 1971 prohibited interviews with the press unless permission was specifically granted by the proper authorities. However, Trahan argues that in direct conflict to the provisions of General Order 7101 is General Order Number 5 purportedly issued in 1972 which provides as follows:
"Press releases.Representatives of the news media are authorized to interview any member of this department on a person-toperson (sic) basis regardless of rank, but this privilege shall not extend to any act which may in any manner jeopardize the investigation and progress or future court proceedings."

Plaintiff argues that the conflicting regulations violate his due process rights in that due process requires that department rules and regulations clearly set forth proscribed conduct.
*1247 Chief Taylor testified that the rules and regulations manual in effect at the time of the incident, a copy of which he referred to during his testimony, did not contain General Order Number 5 as alleged by plaintiff. Rather, Taylor stated, General Order 7101 was in full force and effect at the time of the incident. Several officers of the Jennings Police Department testified that the department had an organized procedure for keeping employees informed regarding rules and regulations in effect at any given time. All of the officers stated that they were aware of General Order 7101 prohibiting them from contact with the press unless permission was obtained from the proper authorities within the department.
Trahan conceded at the hearing that he had knowledge of the prohibition regarding the discussion of police matters with the news media. He further admitted that contra to the clear requirement in General Order 7101, he failed to obtain permission from a superior officer before making his statements to the press. Trahan also conceded that Mayor Garman specifically instructed him not to talk to the newspaper regarding his complaints about the news article appearing on May 30, 1980. In his defense, plaintiff indicated that he did not believe that he was violating the aforesaid general order when he made his statement to the press. Trahan testified that he felt his statements pertained to personal matters, not police business, and that he had a right as a citizen to clear himself in the press. However, when questioned regarding the substance of his complaints with the department, Trahan indicated that he felt that there had been several burglaries committed which were not being investigated by the department.
Although the trial judge does not so state, in his brief written reasons for judgment, presumably, he concluded that General Order 7101 was in effect at the time of the incident and that the plaintiff knowingly issued a statement to the press pertaining to police business in clear contravention of the aforesaid regulation. Further, plaintiff's own testimony clearly establishes that he had knowledge that his contact with the media regarding police business absent permission from his superior officers was proscribed by the applicable rules and regulations of the department.
The standard of appellate review of findings of fact in Civil Service Commission cases necessarily must be the same as those which exist in regard to cases arising in the trial courts. See Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir. 1978). Our review of the record reveals no clear error on the part of the trial court in its conclusions. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975).
Trahan next contends that his conduct toward then Assistant Chief of Police Taylor and Mayor Garman did not constitute insubordination within the meaning of LSA-R.S. 33:2560 A(4) and departmental regulation 310.28. Although "insubordination" is not particularly defined in the aforesaid statute, such conduct is defined in the departmental regulation as "Failure or deliberate refusal of any member or employee to obey a lawful order or criticize instructions or orders being given by a superior officer ...". Trahan avers that only the Mayor directly ordered him to refrain from speaking to the press regarding his complaints, and that, the Mayor is not plaintiff's superior officer within the chain of command set forth in the police department manual. We pretermit any discussion or opinion regarding Trahan's contention since, as previously stated, General Order 7101 specifically prohibits interviews with the news media by departmental personnel unless permission for such interview is obtained beforehand from the proper department authorities. By his own admission, plaintiff made statements to the press in clear contravention of the aforesaid general order. Thus, we conclude that, regardless of how one may characterize his actions, *1248 plaintiff unequivocally violated police department rules and regulations by speaking to the press without permission.
Plaintiff's final contention is that his dismissal from the Jennings Police Department was not made in good faith and for cause as required by LSA-R.S. 33:2561, supra.
In Martin v. City of St. Martinville, 321 So.2d 532 (La.App. 3rd Cir. 1975), writ denied, 325 So.2d 273 (La.1976), our court stated as follows:
"LSA-R.S. 33:2561 provides, in substance, that the issue to be determined by the Police Civil Service Board or by the district court, in the event an appeal is taken to that court, is whether the decision of the appointing authority or of the board was "made in good faith for cause," as set forth in the Fire and Police Civil Service Law for small municipalities (LSA-R.S. 33:2531-2568). We interpret that to mean that the action of the appointing authority, in order to be valid, must be both "in good faith" and "for cause." The action of that authority must be set aside if it was not taken "for cause," even though it may have been taken in good faith." Our particular concern here is whether the suspension or dismissal of plaintiff Martin was made "for cause.""
We further noted in Martin, supra, that the applicable statutes fail to specifically define "for cause". After considering the meaning of the aforesaid phrase in other legal contexts, we concluded as follows:
"We believe that in order for the dismissal or the disciplining of a tenured police officer to be valid, as being in good faith for cause under LSA-R.S. 33:2561, the dismissal or disciplinary action must be reasonably necessary for the continued efficiency of the service being rendered by the appointing authority. The evidence must show that the failure to dismiss or discipline the officer would be detrimental to the city or to the service which it is required to perform. The dismissal of such an officer cannot be said to have been made "in good faith," if the appointing authority acted arbitrarily or capriciously, or if the action taken was the result of prejudice or political expediency. His dismissal cannot be said to have been "for cause," if the evidence fails to show that it was necessary for the discipline and efficiency of the police department, or that it was needed to avoid some detriment to that department or to the city."
In support of his contention that his dismissal was not made in good faith, Trahan argues that Assistant Chief Taylor recommended plaintiff's dismissal to Chief of Police, Gilbert Touchet, in a letter dated May 30, 1980. Trahan avers that no disciplinary action was taken against him until after Taylor was promoted to Acting Chief of Police. In effect, Trahan contends that Taylor and Mayor Garman actively sought his dismissal even though there was no justifiable reason for the same. The record reflects that Taylor did recommend Trahan's dismissal to Chief Touchet on the date of the incident. Further, the record reveals that no action was taken on Taylor's recommendation until June 13, 1980 at which time Taylor had become Acting Chief. When questioned regarding the delay in taking disciplinary action, Mayor Garman stated that both he and Taylor did not want to take any action which might jeopardize the investigation ongoing at the time of the incident. Further, Garman stated that he wanted to allow Trahan time to apologize for the incident and perhaps, avoid disciplinary action altogether. The Mayor indicated that Trahan did not apologize for his conduct until after the decision to terminate his employment had been made and plaintiff notified regarding the same. We conclude, as did the trial court, that the delay in taking disciplinary action against the plaintiff does not support a finding that plaintiff's dismissal by the appointed authority was made in bad faith.
Plaintiff further alleges that his dismissal was not made for cause. As stated, plaintiff's conduct on the date at issue was clearly violative of several police department rules as well as provisions of the Civil *1249 Service Act. The record reflects that Trahan acted discourteously and in a wantonly offensive manner towards a superior officer in front of other department personnel and the public in direct violation of department regulations 310.52, 275.10 and LSA-R.S. 33:2560 A(5). Further, Trahan admittedly made statements to the news media regarding police business in violation of department regulations 310.40 and General Order 7101. Such rules and regulations are designed to insure the orderly and efficient administration of the service being rendered by the employing authority. Clearly, the efficiency of the police department as well as its image in the community is affected whenever an officer makes unauthorized statements regarding police business to the media. In addition, plaintiff's conduct in accusing a superior officer of interfering in a department investigation and covering up for another officer is detrimental to the morale and efficiency of command of such department. Thus, we find no evidence that the trial court manifestly erred in concluding that plaintiff's dismissal was made in good faith and for cause. Canter v. Koehring Company, supra.
For the above and foregoing reasons, the judgment of the district court is affirmed. All costs of this appeal are assessed to plaintiff, Irvin Trahan.
AFFIRMED.
NOTES
[1] LSA-R.S. 33:2561 states:

"Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause may, within fifteen days after the action, demand in writing a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request.
All such hearings and investigations conducted by the board pursuant to the provisions of this Part shall be open to the public. No hearing and investigation shall be held unless both the employee and the appointing authority have been advised at least ten days in advance thereof of the date, time and place therefor. If either the appointing authority or the employee fails to appear at the place and on the day and at the hour fixed for the hearing, the board may decide the issue involved on the basis of the evidence adduced and confined" to the question of whether the action taken against the employee was made in good faith for cause set forth in the provisions of this Part. Both the employee and the appointing authority shall be afforded an opportunity to appear before the board, either in person or with counsel, and present evidence to show that the action was or was not taken in good faith for cause as set forth in the provisions of this Part. The board shall have complete charge of any such hearing and investigation, and may conduct it in any manner it deems advisable, without prejudice to any person or party thereto. The procedure followed shall be informal and not necessarily bound by the legalistic rules of evidence. The board shall not be required to have the testimony taken and transcribed, but either the employee or the appointing authority may, at their own expense, make the necessary arrangements therefor. In such cases, the board may name any competent shorthand reporter as the official reporter. If the testimony is not taken or transcribed, then the board shall make a written finding of fact. After such investigation, if the evidence is conclusive, the board may affirm the action of the appointing authority. If it finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or re-employment of such person in the office, place, position or employment from which he was removed, suspended, demoted or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge or other disciplinary action by directing a suspension without pay for a given period. The decision of the board, together with its written findings of fact, if required, shall be certified in writing to the appointing authority and shall be enforced forthwith by the appointing authority.
Any employee under classified service and any appointing authority may appeal from any decision of the board or from any action taken by the board under the provisions of the Part which is prejudicial to the employee or appointing authority. This appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of appeal, stating the grounds thereof and demanding that a certified transcript of the record, or written findings of fact, and all papers on file in the office of the board affecting or relating to such decisions, be filed with the designated court. The board shall, within ten days after the filing of the notice of appeal, make, certify and file the complete transcript with the designated court and that court thereupon shall proceed to hear and determine the appeal in a summary manner. This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds."
[2] The cited statutes are applicable to municipalities, such as Jennings, La., whose population is less than 13,000.
[3] At the time of the hearing, Taylor was serving as Acting Chief of Police.