# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-923

COLLEEN TOWNSEND

VERSUS

CITY OF LEESVILLE

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 88,028
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**********

### PHYLLIS M. KEATY
### JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

**REVERSED.**

Daniel M. Landry, III
Attorney at Law
Post Office Box 3784
Lafayette, Louisiana 70502
(337) 237-7135
Counsel For Plaintiff/Appellant:
 Colleen Townsend

**Cloyd Benjamin, Jr.**
**Law Office of Cloyd Benjamin, Jr.**
**726-B Third Street**
**Natchitoches, Louisiana  71457**
**(318) 352-7575**
**Counsel for Defendant/Appellee:**
**City of Leesville**

**KEATY, Judge.**

Plaintiff, Colleen Townsend, appeals the trial court's judgment in favor of Defendant, City of Leesville. For the following reasons, the trial court's judgment is reversed.

### FACTS AND PROCEDURAL HISTORY

Townsend, a police officer employed by the Leesville Police Department for eleven years, was terminated from employment on February 11, 2013, for misconduct. This misconduct arose from an incident when Townsend attempted to execute a search warrant. Specifically, Townsend called Judge John Ford at his residence at approximately 2:00 a.m. on November 30, 2012, to obtain his signature on a search warrant. Judge Ford told her to proceed to his house which was located at 1461 Ford's Dairy Road. Instead, Townsend mistakenly went to a home located at 1367 Ford's Dairy Road which belonged to Judge Ford's daughter and son-in-law, Sarah and Milton Belsha. When she arrived at the Belshas' home, Townsend knocked on the carport door. After receiving no response, she contacted Judge Ford by telephone, and he advised her that a light was on inside of his residence and instructed her to walk into his residence. Townsend proceeded to the back of the Belshas' house where she opened a door and pointed her flashlight within. Mrs. Belsha heard a noise and awakened Mr. Belsha who ran towards the door. When he reached the door, which was partially open, he allegedly kicked it closed. Townsend, who was standing outside behind the closed door, identified herself to Mr. Belsha as a police officer. Mr. Belsha subsequently opened the door and told her that she was at the wrong address. Thereafter, Townsend proceeded to the correct address and obtained Judge Ford's signature. Upon leaving the Belshas' residence, Townsend radioed the police dispatcher, Elizabeth Chapman,

and asked her to note her mistake as it might become an issue in the future. Although she thinks she may have mentioned this incident to her shift advisor at the end of her shift, Townsend did not report this incident to anyone else.

The next day, Judge Ford learned about this incident from his wife who learned about it from their daughter, Mrs. Belsha. A few days later, he subsequently discussed the situation with Jack Simms, Jr., the Leesville City Attorney. Simms then told Gregory Hill, the Leesville Chief of Police, who conducted an internal affairs investigation on December 12, 2012. This investigation revealed that Townsend violated police departmental policies regarding a shift commander's duties, personal conduct, and behavior. Townsend was subsequently terminated from employment by the appointing authority and City Administrator, Courtney Christensen. After Townsend appealed her termination to the Leesville Municipal Fire & Police Civil Service Board (the Board) and following a hearing occurring on April 19, 2013, the Board upheld the actions of the appointing authority by a three to two vote.

Townsend appealed the Board's decision to the trial court. After an October 24, 2013 hearing, the trial court found that the Board acted in good faith and had just cause to terminate Townsend. It is from this ruling that Townsend has appealed, contending that the trial court erred in finding that the Board acted in good faith and had just cause when it terminated her from employment.

## LAW AND STANDARD OF REIVEW

Louisiana Revised Statutes 33:2501 provides the procedure for appeals by civil service employees. The standard of review for appealing the Board's decision to the trial court is as follows:

2

> This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section.

La.R.S. 33:2501(E)(3). Good faith fails to occur when the appointing authority acts arbitrarily or capriciously or results from prejudice or political expediency. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App. 3 Cir. 1975), *writ denied*, 325 So.2d 273 (La.1976). Arbitrary or capricious behavior occurs when there is a lack of a rational basis for the action taken. *Shields v. City of Shreveport*, 579 So.2d 961 (La.1991).

"Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service." *Leggett v. Nw. State Coll.*, 242 La. 927, 140 So.2d 5, 9 (1962). A real and substantial relationship must be maintained "between the conduct of the employee and the efficient operation of the public service; otherwise legal cause" fails to exist and "any disciplinary action by the commission is arbitrary and capricious." *Id.* at 10. The action taken by the appointing authority "must be set aside if it was not taken 'for cause,' even though it may have been taken in good faith." *Martin*, 321 So.2d at 535.

"The [a]ppointing [a]uthority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service." *Fernandez v. New Orleans Fire Dep't*, 01-436, p. 4 (La.App. 4 Cir. 2/6/02), 809 So.2d 1163, 1165. A classified employee has a property right in his employment which he cannot be deprived of without legal cause and due process. *Moore v. Ware*, 01-3341 (La. 2/25/03), 839 So.2d 940. The trial court accords deference to a civil service

3

board's factual conclusions which should not be overturned unless they are manifestly erroneous. *Shields*, 579 So.2d 961. Likewise, the intermediate appellate court and our review of a civil service board's factual findings are limited. *Id*. Those findings, which are entitled to the same weight as the trial court's factual findings, cannot be overturned in the absence of manifest error. *Id*.

## DISCUSSION

### I. Duties, Conduct, and Behavior

In her only assignment of error, Townsend contends that the trial court erred in finding that the Board acted in good faith and had just cause when it terminated her from employment.

The transcript of the Board's hearing shows that Townsend was terminated for violating the police department's rules regarding a shift commander's duty, which is contained in the investigative report and provides that:

> It shall be incumbent upon any [s]hift [s]upervisor, who becomes aware of any violation in this Departmental manual, . . . to take the appropriate action deemed necessary for the severity and or validity of the violation. Appropriate actions may mean verbal conference with the affected employee or official action against the affected employee. Official action will include a [s]hift [s]upervisor conducting an initial collection of information from the affected [o]fficer(s) by means of tape recording the entire meeting with the affected [o]fficer and completing a [s]upervisor's [i]ncident report . . . . The [s]upervisor's [i]ncident [r]eport, . . . shall be forwarded to the Internal Affairs Division.

The transcript further shows that Townsend was terminated for violating the personal conduct and behavior policy which provides that "[e]very member of the Leesville Police Department, . . . will behave in a manner as not to bring discredit to themselves or the Leesville Police Department."

In its written ruling dated November 15, 2013, the trial court held that Townsend mistakenly went to the wrong house and "further compounded the

mistake when she opened the door to the Belsha's [sic] house and shined her flashlight in the bathroom." It noted that Townsend unsuccessfully attempted to excuse her conduct by relying on Judge Ford's instructions to enter his house. The trial court found that witnesses testified that she was unprofessional such that the police department was discredited in the eyes of the citizens involved. The foregoing, according to the trial court, constituted good faith and legal cause for the Board's termination.

We, therefore, review the evidence and testimony contained in the transcript of the Board hearing to determine whether it supports the trial court's finding that the Board acted in good faith and had legal cause to terminate Townsend. In that regard, Townsend testified that, on the morning in question, she called Judge Ford three times. Their first conversation, according to Townsend, took place when she initially called him and he advised that he would sign the warrant. She testified that he gave her basic directions to his house, indicating that it was located off Ford's Dairy Road in a hayfield. When Townsend arrived at the Belshas' house, which she believed was Judge Ford's residence, she testified that she knocked on the carport door which was located next to a parked car. After no one answered, she testified that she called Judge Ford for a second time and advised him that she was standing outside by his door. Townsend testified that Judge Ford indicated to her that his back light was on and that she should enter his back door. As there was no light on by the carport door, Townsend testified that she proceeded to the back of the Belshas' house where she "saw a light on in a window and a door next to it." She testified that she opened that door and pointed her flashlight, which was on, into the house. After catching a glimpse of the counter, she testified that she closed the door. Townsend testified that she subsequently heard noise coming

from inside which prompted her to announce her identity. She testified that the door then opened to a man standing there which turned out to be Mr. Belsha. Townsend apologized to him and vice versa according to her testimony. Throughout the Board hearing, she was adamant that she never entered the Belshas' residence.

Mrs. Belsha testified that she, her husband, and their children were sleeping when she was awoken by the sound of their back door opening. Although she testified that she failed to hear Townsend knock prior to allegedly entering, Mrs. Belsha testified that she had no independent recollection as to whether Townsend knocked on their door. Mrs. Belsha testified that from her bed, she noticed a "light from a flashlight that was coming across the wall from the bathroom area." According to Mrs. Belsha's testimony, when she saw the light, she assumed an individual would have to be inside based upon the configuration of their house. Nevertheless, Mrs. Belsha testified that she could not say, beyond a doubt, that Townsend had actually entered their house. Mrs. Belsha testified that she never filed a formal complaint with the police department regarding Townsend's actions.

Similarly, Mr. Belsha's testimony corroborates Mrs. Belsha's testimony. Specifically, Mr. Belsha testified that he woke up when his wife "kicked me out of bed." According to his testimony, he saw the light from a flashlight and began hollering as he ran towards the light, which was coming in from their back door. Mr. Belsha testified that since the back door was slightly open, he kicked it shut. He also testified that, after kicking the door shut, Townsend identified herself, and he re-opened the door. He indicated that Townsend apologized to him and that she acted professionally. Mr. Belsha testified that he never observed Townsend inside

of his residence, and he did not file a formal complaint with the police department regarding her actions.

Judge Ford testified that he lived in the country in the middle of a big field which lacked any street lights. His testimony reveals that during a telephone conversation, he told Townsend that he would leave a light on and that she should enter his residence. Judge Ford's testimony shows that he agreed that it was "pitch black dark" where he resides. As to Townsend's demeanor on the morning in question, Judge Ford testified that she was professional and apologetic for awakening him. On the other hand, he testified that Townsend displayed unprofessional conduct and failed to follow "proper police procedure" when she allegedly entered the Belshas' house without knocking or identifying herself. Nevertheless, Judge Ford testified that neither he nor his wife filed a complaint with the police department regarding Townsend's actions.

Kenneth Pine, an investigator with the police department, testified that he was assigned to investigate the incident. According to his testimony, Pine interviewed Townsend, the Belshas, Judge Ford, and other individuals with knowledge of the incident. Pine testified that Townsend used "[v]ery poor judgment" on the morning in question. He further testified that, during his twenty-five years as a police officer, he has also shown up at the wrong residence.

The foregoing shows that it was not rational for the Board to terminate Townsend especially since none of the individuals involved filed a formal complaint with the police department. Additionally, the evidence in this case fails to show how Townsend's actions impaired the efficiency of the public service or discredited the police department. Contrarily, the evidence shows that she was professional when she went to the wrong house and that she made a reasonable

7

mistake when she went to the Belshas' house. The evidence does not show that Townsend undoubtedly failed to knock, just as it does not show that Townsend undoubtedly entered the Belshas' residence. Accordingly, we find that the trial court was manifestly erroneous in finding that the Board acted in good faith and had just cause when it terminated Townsend from employment. The trial court's judgment is reversed in this regard.

## II.   Information

The transcript of the Board's hearing further shows that Townsend was terminated for violating the police department's rules regarding the transmission of information. The investigative report defines information required in the line of duty as:

> No member of the Department may remain silent when information is required of him or her in the line of duty. He must promptly, fully, truthfully answer all questions asked of him or her by a superior Officer, and must immediately report to the proper Officer any information of which he might have knowledge concerning the commission of a crime, or misconduct by another member of the Department.

In its written ruling, the trial court held that Townsend failed to follow the procedures required to report the incident. It noted that even though Townsend "made a dispatch radio referral to it and then a verbal referral to it[,] [n]ormal procedure required more than she exercised." Once again, we review the evidence and testimony contained in the transcript of the Board hearing to determine whether it supports the trial court's finding that the Board acted in good faith and had legal cause to terminate Townsend.

Townsend testified that she contacted the dispatcher, Chapman, advising that she went to the wrong address. Townsend testified that Chapman should have

8

logged Townsend's notice in the dispatch log. Her allegation is supported by Chapman's testimony that she remembers Townsend reporting the incident.

The foregoing fails to show that Townsend violated the police department's rules regarding the information required in the line of duty. Specifically, she did not "remain silent" regarding the incidence as she reported it to Chapman. Chapman corroborated Townsend's testimony in this regard. Regardless, there is no evidence showing that Townsend's actions constituted "a crime, or misconduct," warranting her to "immediately report" the incident to the proper officer. There also lacks evidence showing that her actions required her to take any further action, in addition to her verbal communication with Chapman, regarding reporting the incident. Accordingly, the trial court was manifestly erroneous in finding that the Board acted in good faith and had just cause in terminating Townsend from employment, and the trial court's judgment is reversed.

## DECREE

The trial court's judgment is reversed. All costs of this appeal are assessed against City of Leesville.

**REVERSED.**