# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 17-327

**CITY OF ALEXANDRIA**

**VERSUS**

**KENDALL DIXON**

\*\*\*\*\*\*\*\*\*\*

ON SUPERVISORY WRIT FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 251,514
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and Candyce G. Perret, Judges

**WRIT GRANTED AND MADE PEREMPTORY.**

**Eugene P. Cicardo, Jr.**
**Joseph M. Reynolds**
**Post Office Box 1128**
**Alexandria, LA 71309-1128**
**(318) 445-2097**

**Philip G. Hunter**
**Hunter & Beck**
**P. O. Box 11710**
**Alexandria, LA 71315-1710**
**(318) 487-1997**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Kendall Dixon**

**Michael J. O'Shee**
**Steven M. Oxenhandler**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71301**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
    **City of Alexandria**

**PERRET, Judge.**

The Relator, Kendall Dixon, seeks supervisory review of a trial court judgment that denied multiple exceptions and a motion to strike, and which reversed the decision issued by the Alexandria Municipal Fire and Police Civil Service Board (the Board) finding that Mr. Dixon was wrongfully terminated by the Respondent, the City of Alexandria (the City). For the following reasons, we hereby grant the writ to reverse that part of the trial court's judgment that reversed the Board and consequently discharged Mr. Dixon from employment with the City.

## FACTS AND PROCEDURAL HISTORY

In 2014, Mr. Dixon was terminated from employment with the Alexandria Fire Department for testing positive on two breath alcohol tests.[1] Mr. Dixon appealed his termination to the Board, arguing that the device used was not an approved testing device and that the results from the test should be excluded. After a hearing, the Board agreed with Mr. Dixon and excluded the allegedly deficient breath alcohol test results and reinstated his employment with the City. However, the trial court reversed the Board's decision, finding the Board should have considered the breath alcohol test results. This court overturned the trial court, and reinstated Mr. Dixon's employment with the City. In *City of Alexandria v. Dixon*, 15-1718 (La. 5/3/16), 196 So.3d 592, the supreme court issued an opinion, reversing this court's decision disallowing consideration of the test results, and stated as follows:

> Although we also find the City did not adhere to its own Substance Abuse Policy and thus reverse that finding by the trial court, we nevertheless determine that, based on *Pullin* [*v. Louisiana*

---

[1] Mr. Dixon was administered two breath alcohol tests, utilizing a Phoenix 6.0 device. The first test registered a positive result of .024, and the second test registered a positive result of .018.

*State Racing Comm'n,* 484 So.2d 105 (La.1986)], the test results are admissible *subject to whatever the weight the Board may choose to assign to the test results.*

196 So.3d at 601 (emphasis added).

On June 22, 2016, in compliance with the supreme court's instruction, the Board again considered Mr. Dixon's appeal of his termination, and again concluded that the City improperly terminated him. Accordingly, the Board reinstated Mr. Dixon to his position with the Alexandria Fire Department. Thereafter, the City filed a second appeal to the trial court, while Mr. Dixon filed the following exceptions and motion: (1) a Motion to Strike and Randomly Allot; (2) the Peremptory Exception of Prescription (alternatively of Peremption); (3) the Peremptory Exception of Nonjoinder of a Party; (4) the Declinatory Exception of Insufficiency of Service of Process; (5) the Declinatory Exception of Lack of Jurisdiction Over the Person; and (6) the Peremptory Exception of No Cause of Action.

After a two-day hearing, the trial court rendered a judgment whereby it denied all of Mr. Dixon's exceptions and motion, and reversed the Board's decision to reinstate Mr. Dixon to his position with the City. At the conclusion of the hearing, on December 16, 2016, the trial court stated, in pertinent part:

> Number one, the results of a Phoenix 6.0 are just as accurate as the Intoxilyzer 5000 and 9000 based upon the evidence that I heard. The variance of a Lifeloc (which manufactures the Phoenix 6.0 breathalyzer) is point zero, zero, five and the Intoxilyzer 5000/9000 is a point zero, one, zero. That's the margin of error.
>
> Number three (sic), the Phoenix 6.0 is a good instrument for testing, . . . breath alcohol.
>
> Number four, the Phoenix 6.0 was in proper working order, was certified and the technician was certified to operate the machine. I find nothing about the way that the cus -- the test was conducted that was inappropriate or would have any negative effect on the test.

2

Number five, … the Court finds that his ethanol, his ethyl alcohol level was -- well this was 11/22, was point zero, one, eight and fifteen minutes later -- no, it's the other way around. His alcohol level was a point zero, two[2] and fifteen minutes later it was a zero, one, eight.

Number six, for a novice drinker his blood alcohol at seven[3] was a zero, six and at seven o'clock if he was an average drinker, it was a point zero eight. Therefore, I find that his blood alcohol when he showed up for work was between an o, six and an o, eight.

Number seven, I find, of course, that the City has a zero tolerance level, and number eight, that Kendall Dixon violated the City policy on April the 22nd, 2014.

. . . based upon those findings and conclusions, I'm gonna find that Mr. Dixon's reinstatement is arbitrary, capricious and abuse of discretion. I think that the evidence shows that he violated the policy obviously greater than a preponderance of the evidence almost to beyond a reasonable doubt and that there was manifest error by the, by the Board doing what they did. Everybody says the machine was in proper working order. His test result violated the zero pol, [sic] uh, zero tolerance order and because of that he violated the order. How anyone can find, uh, anything else to me is, um, is beyond me.

I, I wrote last night, um, when I was sitting around my house, it dawned on me everything that I read. The Board was either not listening, they didn't care about the evidence, or they had already made up their mind. If you use region, [sic] reason, logic and common sense like we use in the Court, in criminal court, I don't see how they could have come up with that decision and I believe that it was abuse of their discretion and it was manifest error.

The Court, as I've said, has found the overwhelming evidence that alcohol was present in his system and that he, uh, violated the City substance abuse policy and, therefore, I reverse the finding of the Civil Service Commission and that Dixon -- reverse the Civil Service Commission and I affirm, uh, the City of Alexandria's decision to terminate his employment as of August the 22nd, 2014.

Mr. Dixon now seeks review of the trial court's March 2, 2017 judgment, and alleges the following nine assignments of error: (1) whether the trial court

---

[2] In actuality, there is no issue between the parties that the initial test result was a 0.024.

[3] This is a reference to the time at which Mr. Dixon had reported to work that morning and that the test would be administered to him at 11:22 later that morning.

3

applied the wrong standard of review in reviewing the Board's July 22, 2016 judgment and substituted its own judgment for that of the Board's; (2) whether the trial court erred in denying his Motion to Strike and Randomly Allot when the City filed documents concerning the new civil service appeal within a docket number assigned to his previous civil service appeal; (3) whether the trial court erred in denying his Peremptory Exception of Prescription when the City failed to file a Petition to appeal the Board's June 22, 2016 decision; (4) whether the trial court erred in denying his Peremptory Exception of Nonjoinder of a Party when the City failed to make the Board a party to the suit; (5) whether the trial court erred in denying his Declinatory Exception of Insufficiency of Service of Process when the City failed to serve Mr. Dixon with the Motion For Court to Set Briefing Schedule and Set Appeal Hearing Date; (6) whether the trial court erred in denying his Declinatory Exception of Lack of Jurisdiction when Mr. Dixon had neither subjected himself to the jurisdiction of the trial court nor been served with process; (7) whether the trial court erred in denying his Peremptory Exception of No Cause of Action when the City failed to file a Petition to appeal the Board's June 22, 2016 decision; (8) whether the trial court erred in re-interpreting the City's Substance Abuse Policy when it was determined that the Phoenix 6.0 is not an approved device under the City's Substance Abuse Policy; and (9) whether the trial court erred in denying Mr. Dixon an appeal from the March 2, 2017, judgment.

## DISCUSSION

Before addressing the merits of this matter, we first note that the trial court correctly denied Mr. Dixon's Motion for Appeal and properly granted his order for supervisory writ of review. Louisiana Revised Statutes 33:2501(E)(1) provides:

> Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

In such an instance, the Louisiana Supreme Court has explained that the court of appeal lacks appellate jurisdiction over the matter. *See Miazza v. City of Mandeville*, 10-304 (La. 5/21/10), 34 So.3d 849 (reviewing the substantially similar language of La.R.S. 33:2561(E) and directing the trial court to convert the plaintiff's appeal of the district court's judgment to an application for supervisory writs). Accordingly, we find that this matter is properly before this court on application for supervisory review.

In his first and eighth assignments of error, Mr. Dixon alleges that the trial court applied the wrong standard of review when reviewing the Board's July 22, 2016 decision and that it substituted its own judgment for that of the Board. Mr. Dixon argues that the Board, as well as this court and the supreme court, have already found that the Phoenix 6.0 is not an approved device under the City's Substance Abuse Policy and that the trial court improperly ignored this concrete finding. In response, the City argues that the trial court properly considered the record to determine if a reasonable factual basis existed for the Board's determination, and that it found such a basis did not exist and ruled accordingly.

This court recently set forth the standard of review to be applied in these civil service employment cases:

> Louisiana Revised Statutes 33:2501(C) orders a civil service board to review disciplinary actions by an appointing authority to determine whether the appointing authority acted "in good faith for cause[.]" "Good faith fails to occur when the appointing authority acts arbitrarily or capriciously or results from prejudice or political expediency. *Martin v. City of St. Martinville*, 321 So.2d 532 (La.App.

5

3 Cir.1975), *writ denied*, 325 So.2d 273 (La.1976)." *Townsend v. City of Leesville*, 14-923, p. 2 (La.App. 3 Cir. 2/4/15), 158 So.3d 263, 266, *writ denied*, 15-703 (La.6/1/15), 171 So.3d 263. An appeal of a civil service board's decision lies with the district court who determines whether the civil service board's decision "was made in good faith for cause[.]" La.R.S. 33:2501(E)(3).

> The [district] court accords deference to a civil service board's factual conclusions which should not be overturned unless they are manifestly erroneous. *Shields [v. City of Shreveport ]*, 579 So.2d 961 [ (La.1991) ]. Likewise, the intermediate appellate court and our review of a civil service board's factual findings are limited. *Id*. Those findings, which are entitled to the same weight as the trial court's factual findings, cannot be overturned in the absence of manifest error. *Id*.
>
> *Townsend*, 158 So.3d at 267.

*Hewitt v. City of Lafayette*, 15-912, p. 5 (La.App. 3 Cir. 3/2/16), 186 So.3d 357, 360-61(alterations in original).

At the conclusion of the Board's hearing, on June 22, 2016, one of the Board's members moved "that the City did not act in good faith and for cause and Mr. Dixon be reinstated to his previous position will [sic] all back pay and everything entitled to him." Three Board members voted for this motion; two voted against it. Counsel for the City then stated, "Can I ask for a finding of facts about why and get it in writing?" The response was "I think you can ask for one, but the law is that we don't have to do one if there's a court reporter, a certified court reporter. And my understanding is that there is one, so." Then, again, the same person stated, "I don't think we have to do one." Immediately subsequent to that exchange, the Board adjourned. Thus, in this case, as noted by the City, there simply are no findings of fact by the Board.

We find the issues presented are whether the decision of the Board "was made in good faith" and whether it was made "for cause." La.R.S. 33:2501(E)(3).

If the Board made the decision "arbitrarily or capriciously" or the decision "results from prejudice or political expediency," the decision should be overturned. *Martin v. City of St. Martinville*, 321 So.2d 532, 535 (La.App. 3 Cir. 1975), *writ denied*, 325 So.2d 273 (La.1976). In this instance, the trial court, after a detailed discussion of the factual record compiled in this case, concluded that the Board's decision was arbitrary and capricious. Although the trial court applied the correct standard of review, we find that it reached the incorrect conclusion.

The trial court found that all of the expert testimony indicated that the Phoenix 6.0 test results were valid. However, we find that some of the expert testimony could be read to indicate otherwise. Mr. Dixon's counsel called Dennis Kerns, who is a Lifeloc master trainer, a breath alcohol technician for the Phoenix 6.0, and a breath alcohol technician instructor, to testify at the Board's hearing. When asked, "Is it true that the breath alcohol technicians are instructed by Lifeloc . . . that when the results of the screening test results and the results of the confirmation test are different, that only the results of the confirmation test determine the outcome of the breath test?," he responded, "Yes, that is correct." When he was also asked, "Is it true that the Lifeloc certified instructors do not train, instruct, or certify, breath alcohol technicians to use the Phoenix 6 [sic] to test for a BAC below .02?," he again responded, "That is correct." Thus, arguably, since Mr. Dixon's confirmation test results were 0.018, the confirmation test results may not have properly been considered as accurate by the technician. However, when opposing counsel asked Mr. Kerns, "And you consider that 0.18 [sic] to be an accurate and reliable reading on August 22nd at 11:38 in the morning, wouldn't you?," he responded, "Yes, sir."

Counsel for Mr. Dixon also called Doussan Rando, III, who is the Applied Technology Director with the Louisiana State Police, to testify. Mr. Rando testified that he oversees all breath alcohol testing and certifies, or causes to be certified, all the breath alcohol testing devices located in Louisiana. He also evaluates the devices on the market. When asked about the technology used by the Intoxilyzer 5000, i.e., infrared spectrometry, versus the Phoenix 6.0, i.e., fuel cell, Mr. Rando testified as follows:

> Well, infrared, what it does, there's a sample chamber and whenever you blow a breath sample through there, it looks at absorption of any kind of chemical that might be in your breath. And we know that with the Intoxilyzer 5000, the weight limit for alcohol is somewhere around 3.39 microns, so what it does, it actually looks for alcohol. And if there's any other substance in the breath it would also detect it too. Now, we know there's not going to be any other substance in the breath other than if someone had drank [sic] methyl alcohol, but I'll tell you what, I've never seen it in all my years and I have given thousands and thousands of tests.
>
> And, of course, people who are diabetics, you know, it will -- it will show up acetone and let us know that acetone is present in the breath alcohol sample. The problem with the fuel cell is that it's non specific to ethyl alcohol. So if acetone's on breath, you know, it will show a positive there and you don't really know if it's alcohol or if it's acetone.

In closing argument, counsel for Mr. Dixon stated that Mr. Dixon was diabetic and stated that "it's in evidence" and the City does not argue otherwise.

Michael Moore, an expert in forensic toxicology and breath testing procedures and devices, including the Lifeloc instruments, also testified and stated that the fuel cell technology utilized by the Phoenix 6.0 would not register acetone in the breath alcohol test. Thus, there is an apparent conflict in the testimony of at least two of the witnesses regarding the accuracy of the test results from the Phoenix 6.0. Despite this apparent conflict in the testimony, the trial court concluded that it was "beyond me" "(h)ow anyone can find . . . anything else."

After a review of the record, and the fact that the supreme court remanded the case to the Board for it to decide what weight to assign to the test results, we find that the Board did have a reasonable basis for totally discounting the Phoenix 6.0 test results. Accordingly, we find it was error for the trial court to reverse the Board's decision that the City had not acted in good faith in terminating Mr. Dixon, and we reinstate the Board's ruling and Mr. Dixon's employment with the City.

Because we find merit in Mr. Dixon's argument that the trial court erred in finding that the Board acted arbitrary and capricious, and because we are reversing the trial court's judgment and reinstating the Board's decision to reinstate Mr. Dixon's employment with the City, we pretermit discussion of Mr. Dixon's remaining assignments of error.

## DECREE

For the foregoing reasons, the March 2, 2017 trial court judgment is reversed and the Board's decision to reinstate Mr. Dixon is affirmed.

**WRIT GRANTED AND MADE PEREMPTORY.**

9